FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

2007 JUL -9  P  4: 47

CLERK US DISTRICT COURT
ALEXANDRIA. VIRGINIA

SHIPBUILDERS COUNCIL OF )
AMERICA, INC. )
A Virginia Non-Stock Corporation, )
Steven W. Silver, r/a )
2300 Clarendon Blvd., Suite 2010 )
Arlington, Virginia  22201 )
)
CROWLEY MARITIME CORP. )
9487 Regency Square Blvd., )
Jacksonville, Florida  32225 )
)
OVERSEAS SHIPHOLDING )
GROUP, INC. )
666 Third Avenue )
New York, New York  10017 )
)
        Plaintiffs, )
)
        v. )        Case No. 1:07cv665
)                   GBL/BRP
UNITED STATES DEPARTMENT OF )
HOMELAND SECURITY )
425 Murray Lane, Building 410 )
Washington, D.C.  20528 )
)
UNITED STATES COAST GUARD )
2100 Second Street SW )
Washington, D.C.  20593 )
)
NATIONAL VESSEL )
DOCUMENTATION CENTER )
792 T.J. Jackson Drive )
Falling Waters, WV  25419 )
)
        Defendants. )

## COMPLAINT FOR REVIEW OF AGENCY ACTION AND FOR DECLARATORY AND INJUNCTIVE RELIEF

## JURISDICTION AND VENUE

1. This court has jurisdiction under 5 U.S.C. § 702, 28 U.S.C. §§ 1331, 1333, 1337, 1361, 1651 and 2201-02, 46 U.S.C. §§12101 *et seq.*, and 46 U.S.C. §§ 55301 *et seq.* Venue is proper under 28 U.S.C. § 1391(e).

## NATURE OF THE CASE

2. This is an action for review of the issuance of a certificate of documentation with a coastwise endorsement by the National Vessel Documentation Center ("NVDC"), a unit of the United States Coast Guard ("Coast Guard"), authorizing the Motor Tanker SEABULK TRADER ("M/T SEABULK TRADER") to engage in U.S. domestic trades even though it has had double sides added in a foreign shipyard to make it a double-hulled vessel. Since the beginning of this Nation, our domestic shipping trades (or "coastwise" trades) have been reserved to vessels built in the United States in order to provide a supply of suitable vessels and trained mariners to promote the commercial interests of the country, and to serve as a military auxiliary in time of war or national emergency. Consistent with this rule, a vessel that has obtained coastwise trading privileges and is later rebuilt must be rebuilt entirely in the United States in order to retain coastwise trading privileges.

3. The U.S. flag oil tanker fleet is currently undergoing a major renewal as a result of the Oil Pollution Act of 1990 ("OPA 90"), 46 U.S.C. §§ 3703a *et seq.* To improve environmental protection, OPA 90 phases out the use of single-hulled vessels to carry oil in U.S. waters, and requires use of double-hulled vessels. Some companies, including two of the plaintiffs in this action, are renewing their fleets in compliance with U.S. law by building or rebuilding double-hulled vessels in U.S. shipyards. They are

2

investing billions of dollars in construction orders for environmentally advanced vessels, orders that are helping to revitalize America's commercial shipbuilding industry.

4. Other companies, however, are skirting the law by constructing double hulls on existing vessels in foreign shipyards. They obtained preliminary determinations in confidential proceedings before the NVDC stating that such work would not disqualify the vessels from U.S. coastwise privileges. On May 9, 2007, NVDC issued a certificate of documentation with a coastwise endorsement to Seabulk Energy Transport Inc. covering the M/T SEABULK TRADER. The M/T SEABULK TRADER had just departed a shipyard in the People's Republic of China, where extensive work was done to its hull to convert (or retrofit) the vessel from a single-hulled to a double-hulled configuration. NVDC's issuance of the certificate of documentation with a coastwise endorsement permits the M/T SEABULK TRADER to operate in U.S. domestic trades.

5. The Coast Guard's decision to issue the coastwise endorsement and thereby approve the rebuilt vessel for continued use in the coastwise trades causes substantial harm to companies that will be forced to compete with the M/T SEABULK TRADER while having incurred the much higher costs of complying with the law. It will have far reaching consequences to the entire U.S. flag fleet and the U.S. shipbuilding industry as it is applied in other cases. Because the decision is arbitrary, capricious, an abuse of discretion, contrary to law, and issued without observance of procedures required by law, Plaintiffs seek in this action an order declaring it to be invalid, vacating it, and enjoining the Coast Guard from acting in further reliance on it.

## THE PARTIES

6. Plaintiff SHIPBUILDERS COUNCIL OF AMERICA, INC. ("SCA") is a
Virginia corporation. SCA is the largest national trade association representing the U.S.
shipyard industry. SCA represents 36 members that own and operate over 100 shipyards
in the United States. Members of SCA have the capacity and capability to perform the
work necessary to build or rebuild double-hulled tank vessels sufficient to meet U.S.
domestic transportation requirements.

7. Unless reversed, the Coast Guard's action will seriously and adversely affect
the interests of U.S. shipyards and shipyard employees, including members of the
Plaintiff SCA, in that they, (A) have lost and, based on the precedent established by this
action, will lose the right to compete solely with U.S. shipyards to perform any double-
hull retrofitting work, and (B) may lose orders for newly-constructed tank vessels to the
extent that demand in the domestic tanker industry is met with tank vessels that have
been rebuilt in foreign shipyards.

8. Plaintiff CROWLEY MARITIME CORP. ("Crowley") is a Delaware
corporation. Crowley is one of the leading American shipping companies. It provides a
diversified array of marine services, including domestic and international container
shipping, logistics, and marine contract and salvage operations. Crowley is also one of
the largest independent operators of petroleum tank barges and tankers in the United
States. Crowley's tank vessels include self-propelled tank ships, articulated tug and barge
units ("ATBs") (specially designed vessels which consist of a tank barge that has been
notched in the aft section, and a high-powered tugboat that connects to the barge in the

4

notch and pushes it through the water) and conventional tug and barge units (barges that are towed behind the tug attached with a cable).

9. Four tank vessels in Crowley's fleet are currently configured as double-bottomed, single-sided vessels. Beginning in 2012, these vessels will not comply with the requirements of the OPA 90 that they be fully double-hulled. Crowley determined that these vessels would lose their domestic trading privileges if they were retrofitted to meet OPA 90 requirements in a foreign shipyard.

10. Crowley is in the process of building by 2010 a total of at least fourteen (14) new ATBs entirely in U.S. shipyards at a total cost of about $1 billion. Crowley deploys these and other tank vessels in its fleet to carry petroleum products throughout U.S. domestic commerce. Crowley's vessels meet the requirements of U.S. law, and will compete directly with the M/T SEABULK TRADER and other similarly situated vessels. Based on the Coast Guard's action and the resulting precedent allowing the conversion in foreign shipyards of U.S. flag tank vessels to double hull configurations, the M/T SEABULK TRADER and similar vessels will operate at substantial savings over competing Crowley vessels.

11. Plaintiff OVERSEAS SHIPHOLDING GROUP, INC. ("OSG") is a Delaware corporation with headquarters in New York. OSG is the second largest independent tanker owner in the world, with a fleet of more than 100 vessels, including approximately 25 U.S. flag tank vessels that operate in U.S. coastwise trades. OSG's fleet includes self-propelled tank vessels and ATBs. OSG subsidiary OSG Ship Management, Inc. ("OSGM") operates and technically manages the U.S. flag vessels.

5

12. OSG owns eight tank vessels (ATBs) that it was required to retrofit with complete double-hull configurations to comply with OPA 90. Seven of those vessels were retrofitted to fully double-hulled configuration in a U.S. shipyard, and the eighth is currently under construction in a U.S. shipyard. Performing such work in a U.S. shipyard is substantially more expensive than in a shipyard in the People's Republic of China, and OSG thus has incurred, and is continuing to incur, substantial additional costs as a result of the requirement of U.S. law that tank vessels be retrofitted in a U.S. shipyard in order to retain domestic trading privileges.

13. In addition, OSG has already built new tank vessels, and is in the process of building additional new tank vessels in U.S. shipyards to replace U.S. flag vessels that are being phased out of service pursuant to OPA 90, including both self-propelled vessels and ATBs. OSG's tank vessels meet the requirements of U.S. law, and will compete directly with M/T SEABULK TRADER and other similarly situated vessels.

14. Unless reversed, this action will seriously and adversely affect the interests of companies that own and operate tank vessels that have been or will be built or rebuilt entirely in the United States, including Plaintiffs Crowley and OSG, in that said owners will be forced to compete with a tank vessel that has been rebuilt at substantially lower costs in a foreign shipyard and allowed to operate in U.S domestic trades contrary to U.S. law.

15. Defendant U.S. DEPARTMENT OF HOMELAND SECURITY is a department of the Executive Branch of the United States Government, responsible for the administration of the applicable vessel documentation statutes and the regulations promulgated thereunder.

16. Defendant U.S. COAST GUARD is an agency in the U.S. DEPARTMENT OF HOMELAND SECURITY, responsible for the administration of applicable vessel documentation statutes, and the regulations promulgated thereunder.

17. Defendant NATIONAL VESSEL DOCUMENTATION CENTER ("NVDC") is the organizational unit designated by the Commandant of the United States Coast Guard to process vessel documentation transactions and maintain vessel documentation records for vessels documented and registered under the laws of the United States, and is responsible for the administration of the applicable vessel documentation statutes, and the regulations promulgated thereunder.

**Relevant Statutory and Regulatory Provisions**

*A. The Jones Act*

18. The preamble to the law reserving domestic maritime trade to U.S. flag vessels, as codified without intended substantive change by Public Law 109-304 (Oct. 6, 2006), provides in part:

(a) OBJECTIVES. – It is necessary for the national defense and the development of the domestic and foreign commerce of the United States that the United States have a merchant marine –

(1) sufficient to carry the waterborne domestic commerce and a substantial part of the waterborne export and import foreign commerce of the United States and to provide shipping service essential for maintaining the flow of the waterborne domestic and foreign commerce at all times;

(2) capable of serving as a naval and military auxiliary in time of war or national emergency;

(3) owned and operated as vessels of the United States by citizens of the United States;

(4) composed of the best-equipped, safest, and most suitable types of vessels and manned with a trained and efficient citizen personnel; and

(5) supplemented by efficient facilities for building and repairing vessels.

7

(b) POLICY. – It is the policy of the United States to encourage and aid the development and maintenance of a merchant marine satisfying the objectives described in subsection (a).

46 U.S.C. § 50101.

19.  In furtherance of this policy, U.S. law requires commercial vessels to have certificates of documentation that carry endorsements identifying the trades in which each vessel may operate.  In order to provide services in the U.S. domestic trades, a vessel must have a certificate of documentation with a coastwise endorsement.  Section 27 of the Merchant Marine Act, 1920 (commonly referred to as the "Jones Act"), as codified, thus provides:

REQUIREMENTS.—Except as otherwise provided in this chapter or chapter 121 of this title, a vessel may not provide any part of the transportation of merchandise by water, or by land and water, between points in the United States to which the coastwise laws apply, either directly or via a foreign port, unless the vessel—

(1) is wholly owned by citizens of the United States for purposes of engaging in the coastwise trade; and

(2) has been issued a certificate of documentation with a coastwise endorsement under chapter 121 or is exempt from documentation but would otherwise be eligible for such a certificate and endorsement.

46 U.S.C. § 55102(b).

20.  A vessel may be issued a coastwise endorsement only if the vessel "was built in the United States", or meets other criteria not relevant to this action.  46 U.S.C. § 12112(a)(2).

21.  A coastwise qualified vessel loses its eligibility to provide services in the coastwise trade if that vessel is rebuilt outside the United States.

A vessel eligible to engage in the coastwise trade and later rebuilt outside the United States may not thereafter engage in the coastwise trade.

46 U.S.C. § 12132(b).  For purposes of this provision:

> . . . a vessel is deemed to have been rebuilt in the United States only if the entire rebuilding, including the construction of any major component of the hull or superstructure, was done in the United States.

46 U.S.C. § 12101(a).

22.  The provisions of current law requiring a coastwise vessel to be rebuilt in the United States to retain its coastwise privileges are a recodification, without intended substantive change, of the Second Proviso of the Jones Act, which read:

> That no vessel which has acquired the lawful right to engage in the coastwise trade, by virtue of having been built in or documented under the laws of the United States, and which has later been rebuilt, shall have the right thereafter to engage in the coastwise trade, unless the entire rebuilding, including the construction of any major components of the hull or superstructure of the vessel, is effected within the United States, its Territories (not including trust territories), or its possessions.

46 U.S.C. App. § 883, codified by Pub. L. 109-304 (Oct. 6, 2006).

### B. OPA 90

23.  OPA 90, enacted primarily in response to the EXXON VALDEZ oil spill in 1989, made extensive changes in the laws governing the transportation of oil by tank vessels in United States waters.  The changes were designed to make the shipment of crude oil and refined oil products ("oil cargoes") in the United States environmentally safer.

24.  Among the key changes mandated by OPA 90 was to phase out the shipment of oil cargoes in single-hull vessels in U.S. waters.  *See* 46 U.S.C. §§ 3703a(c)(3),(4). The phase-out schedule began in 1995 and ends in 2015.  Three factors determine the phase-out deadline applicable to a specific single-hull vessel: (a) its age; (b) its size (or gross tonnage); and (c) its hull configuration.  A single-hull vessel with double-sides or a

double-bottom may have a maximum of five years more service life than it would otherwise have based on its age and size.

25. Because of the OPA 90 phase-out schedule, owners of tank vessels and U.S. shipyards have had to make important investment decisions. In making these decisions, U.S. shipyards and tank vessel owners have had to assess the continuing demand for domestic transportation of oil cargoes, and the extent to which the demand will be met in various ways. Options to meet the demand include transporting oil using existing or new double-hull tank vessels, single-hull vessels that have been retrofitted with double hulls, or in some other manner (such as by pipelines or imports of refined oil products).

26. Owners of U.S. shipyards, including members of Plaintiff SCA, have invested hundreds of millions of dollars (in some cases supported by public funding) to renovate their facilities in order to have the capability of building modern, double-hull tank vessels.

27. Owners of single-hull tank vessels for which the OPA 90 deadline is approaching have three basic options: (a) scrap the vessel; (b) use the vessel to carry cargoes not covered by OPA 90 (such as grain cargoes, or oil cargoes outside the United States); or (c) convert (or retrofit) the vessel to a double-hulled configuration. In choosing among these options, a key consideration is the shipyard at which the retrofit work would be performed. While retrofitting a vessel in a U.S. shipyard would permit the vessel to maintain domestic trading privileges, it would also be substantially more expensive than performing the work in many foreign shipyards, including those in the Peoples' Republic of China.

28.  In making their investment decisions, Plaintiffs relied upon U.S. law and

Coast Guard rules that prohibit tank vessels that have been retrofitted with a double-hull

in a foreign shipyard from retaining U.S. domestic trading privileges.

### C.  Coast Guard Regulations

#### 1.  Vessel Documentation – Foreign Rebuild Regulations

29.  The Coast Guard regulations implementing the vessel documentation

provisions above are promulgated at 46 C.F.R. § 67.177.  They provide in relevant part:

> A vessel is deemed rebuilt foreign when any considerable part of its hull
> or superstructure is built upon or substantially altered outside of the
> United States.  In determining whether a vessel is rebuilt foreign, the
> following parameters apply:
>
>     (a)    Regardless of its material of construction, a vessel is
> deemed rebuilt when a major component of the hull or superstructure not
> built in the United States is added to the vessel.
>
>     (b)    For a vessel of which the hull and superstructure is
> constructed of steel or aluminum –
>
>     (1)    A vessel is deemed rebuilt when work performed on its hull
> or superstructure constitutes more than 10 percent of the vessel's
> steelweight, prior to the work, also known as discounted lightship weight.
>
>     (2)    A vessel may be considered rebuilt when work performed
> on its hull or superstructure constitutes more than 7.5 percent but not more
> than 10 percent of the vessel's steelweight prior to the work.
>
>     (3)    A vessel is not considered rebuilt when work performed on
> its hull or superstructure constitutes 7.5 percent or less of the vessel's
> steelweight prior to the work.

30.  The NVDC has confirmed in several rulings that a vessel is deemed to have

been rebuilt:  (a) when a major component of the hull or superstructure not built in the

United States is added to the vessel, or (b) when relevant work (that is, work performed

on its hull or superstructure) constitutes a considerable part of the hull or superstructure.

31. With regard to the first test, if a major component of the hull or superstructure, not built in the United States, is added to the vessel, the vessel will be determined to have been rebuilt regardless of the material of construction. The NVDC has consistently held that foreign components amounting to less than 1.5% of a vessel's steel weight are not considered "major." It has also held that additions to the hull or superstructure clearly fall within the definition of foreign rebuild, and allowed only small amounts of steel work to be performed on the hull or superstructure in foreign shipyards without jeopardizing the vessel's coastwise privileges.

32. With regard to the second test, the NVDC has applied the percentage limitations in 46 C.F.R. § 67.177(b) in determining what constitutes a "considerable part" of the hull or superstructure.

33. In applying these percentage limitations, the NVDC has ruled in some instances that both the steel to be added and the steel to be removed in the foreign shipyard must be counted. In later instances, the NVDC has ruled that it would count only the greater of the amount of steel added or steel removed, but not both. The NVDC has given no explanation for these inconsistent rulings or change in position.

34. The NVDC has held that the steel weight of work performed in a foreign shipyard above the 7.5% threshold but below the 10% threshold would not disqualify the vessel if there were no additions or modifications to the vessel. The NVDC has also held that components constituting as little as 1.5% of a vessel's steel weight that are added to the hull or superstructure of the vessel in a foreign shipyard may constitute a foreign rebuild and disqualify the vessel from retaining coastwise privileges.

35. The entire rebuilding of a vessel must be performed within the United States. The NVDC has acknowledged that it must consider the nature of a project as a single project, or as differentiated projects, in view of the entire rebuilding requirement when work is to be performed in both United States and foreign shipyards.

2. *OPA 90 – Tank Vessel Retrofit Regulations*

36. On September 21, 1990, shortly after OPA 90 was enacted, the Coast Guard issued Navigation and Vessel Inspection Circular ("NVIC") 2-90, a copy of which is attached hereto as Exhibit 1. The purpose of NVIC 2-90 was "to provide guidance to the marine industry for the construction of new tank vessels, and the retrofitting of existing tank vessels with double hulls as required" by OPA 90.

37. With respect to retrofitting vessels, NVIC 2-90 stated in relevant part:

> The retrofitting of double hulls, double sides, or bottoms within or upon a vessel will be considered to be a rebuilding within the meaning of 46 C.F.R. 67.27-3.

NVIC 2-90, paragraph 4.c. The regulation referenced (46 C.F.R. 67.27-3) was moved without change to 46 C.F.R. § 67.177 when Part 67 was reorganized in November 1993. *See* 58 Fed. Reg. 60,256 (Nov. 15, 1993).

38. In September 1992, the Coast Guard issued an Interim Final Rule ("IFR") providing detailed construction standards for vessels to meet OPA 90 double hull requirements. 57 Fed. Reg. 36,222 (1992). The IFR amended 33 C.F.R. Part 157, concerning vessel construction, but did not amend 46 C.F.R. Part 67, concerning vessel documentation. The Coast Guard issued "Change 1" to NVIC 2-90, a copy of which is attached to and included with Exhibit 1, to account for the changes in construction standards, but did not alter the NVIC with respect to the retrofitting issues that are the subject of this action. NVIC 2-90 has not been further amended or withdrawn.

39.  In 1996, the Coast Guard revised its rules guiding determinations as to what constitutes a foreign rebuild, including 46 C.F.R. § 67.27-3, the provision referenced in NVIC 2-90.  Nowhere in the revised rules, or in the Notice of Proposed Rulemaking or Notice of Final Rule, did the Coast Guard reference or address NVIC 2-90 or deal with the effects of retrofitting existing single-hulled vessels to double-hulled configuration on the coastwise eligibility of those vessels.

3.  *Coast Guard Administrative Procedures*

40.  The NVDC issues a "preliminary rebuilt determination" to a vessel owner upon application and submission of information regarding the work to be performed.  *See* 46 C.F.R. § 67.177 (g).  The information required to be provided includes calculations showing the actual or comparable steel weight of the work to be performed and accurate sketches or blueprints showing the planned work.  The application must outline in detail the work planned and where it will be performed.

41.  Neither the application for such a determination nor the information provided with it are subject to public notice.  Persons whose interests may be substantially affected by such determinations may obtain copies of the determinations only weeks or months after they are issued, and only if they (a) become aware of the determinations, and (b) submit requests pursuant to the Freedom of Information Act, 5 U.S.C. §§ 551 *et seq.* ("FOIA").  Should an interested person become aware of a relevant determination and submit a FOIA request for it, NVDC's responses to such requests often do not include the application or relevant background information, which is typically withheld based upon a claim that such information is confidential commercial information.  These procedures prevent persons whose interests may be directly and substantially adversely impacted

14

from obtaining timely notice as to the existence of the proceeding, and information about the request that is adequate to respond to it.

42.  NVDC responded on June 11, 2007, to a FOIA request submitted on behalf of Plaintiff Crowley on April 16, 2007, seeking all requests for rulings submitted to NVDC in connection with the preliminary rebuild determinations covering the M/T SEABULK CHALLENGE, M/T SEABULK TRADER, and M/T DELAWARE TRADER, as well as any attachments, follow-up correspondence or other related documents.  NVDC advised that 34 documents were responsive to the April 16, 2007, FOIA request, and that all 34 documents were being withheld in their entirety.

43.  The owner of a vessel possessing a coastwise endorsement that is altered outside of the United States and for which the work performed is determined to constitute more than 7.5 percent of the vessel's steel weight prior to the work, or which has a major component of the hull or superstructure not built in the United States added, must file specific information with the NVDC within 30 days following the earlier of completion of the work or redelivery of the vessel to the owner.   46 C.F.R. § 67.177(e).  The public receives no notice that this information has been filed.

44.  Coast Guard regulations permit, but do not require, administrative appeals of vessel documentation decisions.  46 C.F.R. section 1.03-15(a).

**Facts**

45.  The M/T SEABULK TRADER was a single-sided, double bottom tank vessel built in the United States in 1981.  It carried a Certificate of Documentation with a coastwise endorsement, and was employed carrying oil cargoes in United States domestic

15

trades. On information and belief, the M/T SEABULK TRADER must meet OPA 90 requirements in the year 2011 or lose its eligibility to carry oil cargoes in U.S. waters.

46. On May 20, 2005, the NVDC issued a preliminary rebuild determination concerning the M/T SEABULK TRADER and another vessel, the M/T/ SEABULK CHALLENGER. The request for the ruling submitted by the vessels' owner (according to the ruling itself) specified two options for converting these vessels in a foreign shipyard from their then configuration as tank vessels with a double bottom and single sides to vessels with a double hull. The work required the addition of interior sides and associated strengthening structures to the hull of the vessels. This work was meant to bring the vessels into compliance with OPA 90 double hull requirements before the vessels reached their phase-out dates. The request sought confirmation that performing the work as specified would not result in a determination that the vessels had been rebuilt foreign.

47. The NVDC's preliminary rebuild determination concerning the M/T SEABULK TRADER made no mention of NVIC 2-90. It stated that the watertight boundary to be added to the existing hull by the proposed work was intrinsic to the hull itself. It declined, however, to characterize it as a "major component" to be added to the hull. NVDC made its determination as to whether this work constituted a rebuilding based solely on the percentage of steelwork to be added in the foreign shipyard. Under the first proposed option, the added steel weight percentage was determined to be 8.57 percent, and under the second proposed option, the added steel weight percentage was determined to be 7.97 percent. The NVDC concluded that, under either option proposed,

"the proposed work would not result in a determination that the Vessels had been rebuilt foreign."

48. Based on information and belief, the weight of the steel required to retrofit the M/T SEABULK TRADER with double sides throughout the vessel in order to meet OPA 90 requirements would exceed the percentages indicated in either option, and would exceed 10 percent, if all components were properly considered, if calculated as required by Coast Guard regulations and past NVDC precedents, and if the entire project is considered.

49. On April 25, 2007, Plaintiff Crowley filed an administrative appeal of the preliminary rebuild determination made by the NVDC covering the Seabulk vessels, as well as two more preliminary rebuild determinations, issued in 2007, that would authorize double hull retrofits of tank vessels owned by Keystone Shipping Co. and U S. Shipping Partners L.P.   This appeal was filed with the Commandant of the U.S. Coast Guard in accordance with the provisions of 46 C.F.R. § 1.03-15.  Plaintiff SCA submitted a letter in support of this appeal on May 4, 2007.

50. On May 9, 2007, the Coast Guard issued a certificate of documentation with a coastwise endorsement to the M/T SEABULK TRADER.  A copy of the certificate of documentation is attached hereto as Exhibit 2.  On information and belief, Seabulk did not submit the documentation required by 46 C.F.R. § 67.177(e), including without limitation, actual sketches or blueprints describing the planned work.

51. By issuing the certificate of documentation with a coastwise endorsement covering the M/T SEABULK TRADER, the Coast Guard denied the pending administrative appeal of the preliminary rebuild determination with respect to that vessel.

Plaintiff Crowley thus notified the Commandant by letter of June 26, 2007, that its appeal of that determination is therefore moot.

52.  Issuance of the certificate of documentation with a coastwise endorsement covering the M/T SEABULK TRADER constituted final agency action as to that vessel under this Court's opinion in *Shipbuilders Council of America v. U.S. Department of Homeland Security*, Civ. No. 1:06-cv-01297-TSE-LO (April 6, 2007).

## NVDC Errors

53.  By issuing to the public a rule (NVIC 2-90) that directly and specifically declared how the Coast Guard would treat double hull retrofits under the foreign rebuild provision, and by declaring in that rule that such retrofits, without limitation, would be considered rebuilds and therefore required to be completed in the United States for the vessels to retain coastwise trading privileges, the Coast Guard established a rule that reflected accurately the plain language and intent of the foreign rebuild provision as applied to retrofits, as well as Coast Guard regulations implementing the statute.  The public was required to follow that rule, and the Coast Guard could not substantially change that rule except in accordance with lawful administrative procedures.  The Coast Guard did not modify that rule in the 1996 rulemaking proceeding, and arbitrarily and capriciously reversed that rule through the NVDC's issuance of a private ruling covering the M/T SEABULK TRADER, which it followed up by issuing the Certificate of Documentation with a coastwise endorsement for the M/T SEABULK TRADER. Members of the public, including the plaintiffs herein, were severely prejudiced by the Coast Guard's failure properly to apply to the M/T SEABULK TRADER the foreign rebuild provision as stated in the statute, Coast Guard regulations, and in NVIC 2-90.

54. Based on information and belief, NVDC failed to follow its regulations in connection with the issuance of the preliminary rebuilt determination covering the M/T SEABULK TRADER.  In particular, based on information and belief, NVDC failed to require the vessel owner to provide sufficient information required by 46 C.F.R. § 67.177 (g), and failed to evaluate critically the information submitted by the vessel owner.  As a result of these errors, NVDC issued its preliminary rebuilt determination advising that completing the proposed retrofit in a foreign shipyard would not result in the loss of coastwise privileges, when it should have determined that completing the retrofit as proposed would constitute a foreign rebuild, with the corresponding loss of coastwise privileges.

55. Having issued the preliminary rebuilt determination advising that the M/T SEABULK TRADER would not lose its coastwise privileges despite being retrofitted in the People's Republic of China, NVDC on May 9, 2007, simply issued the certificate of documentation with a coastwise endorsement upon application by the vessel's owner.  On information and belief, the Coast Guard acted without the information required by 46 C.F.R. § 67.177(e) being submitted and examined by the Coast Guard.  It did not consider the application *de novo* despite the requirements of 46 C.F.R. § 67.177(e), and despite notice of the administrative appeal and the substantial issues raised in that appeal as to the merits of its prior determination.

56. NVDC's issuance of a certificate of documentation to the M/T SEABULK TRADER upon its conversion to a double hull vessel in accordance with the proposal submitted to the NVDC contravenes established law, regulations and Coast Guard rulings.  Specifically, and without limitation:

a.    46 U.S.C. § 12101(a) provides that a vessel is considered to have been rebuilt in the United States only if the entire rebuilding, including the construction of any major component of the hull or superstructure, was performed in the United States. Similarly, the Defendants' regulations provide that "a vessel is deemed rebuilt when a major component of the hull or superstructure not built in the United States is added to the vessel." The NVDC determined that the work done in a foreign shipyard to convert the M/T SEABULK TRADER to a double hull configuration would substantially alter the hull, yet found, contrary to law, that this did not constitute the addition of a major component to the vessel or otherwise constitute a rebuild of the vessel.

b.    The Defendants' regulations also provide that a vessel may be deemed rebuilt when work performed on its hull or superstructure constitutes more than 7.5 percent of the vessel's steel weight prior to the work, and would be deemed rebuilt when the work performed on its hull or superstructure constituted more than 10 percent of the vessel's steel weight prior to the work. In making the subject determinations, the Coast Guard failed to apply its own standards in determining whether or not the steel work performed on the M/T SEABULK TRADER met the 7.5 percent or 10 percent thresholds. In particular, on information and belief, the Coast Guard did not require the submission of all information required by its regulations, did not include all steel components of the foreign work in its calculations, did not utilize the same criteria as it had used in the past in determining which steel work would and would not be considered in determining the percentage of work performed on the vessel for purposes of the rebuilt determination, did not offer a reasonable basis for its conclusion that no major components were added to the vessel, did not consider whether the work constituted additions or modifications to the vessel as opposed to repair or replacement work, and did not consider follow-on work to complete the project.

c.    The Coast Guard rule specifically applicable here, as provided in NVIC 2-90, has long established that the retrofitting of a double bottom vessel to double hull vessel, as was done in the case of the M/T SEABULK TRADER, is considered to be a rebuild of the vessel and, if done in a foreign shipyard, would make the vessel ineligible under 46 U.S.C. § 12312 (b) for service in the domestic coastwise trade. NVDC violated this rule by issuing a certificate of documentation with a coastwise endorsement to the M/T SEABULK TRADER.

d.    The NVDC failed to consider whether work necessary to complete the project would be performed both in foreign and United States shipyards, thus ignoring the statutory requirement that the entire rebuilding of a vessel must take place in the United States.

57. Defendants' action in issuing a certificate of documentation with a coastwise endorsement to the M/T SEABULK TRADER was contrary to law, arbitrary and capricious, an abuse of discretion and without adequate explanation. Further, this action has established a precedent and policy to allow future major conversions to double hull configurations in foreign shipyards of tank vessels with coastwise endorsements such as to allow those vessels to maintain their coastwise privileges, contrary to applicable statutory provisions, as well as Coast Guard regulations, rulings and policy, and to the substantial prejudice of Plaintiffs.

## FIRST CAUSE OF ACTION

58. Plaintiffs hereby repeat and reallege and incorporate paragraphs 1 through 57 above.

59. The ruling of the Defendants that the M/V SEABULK TRADER was not rebuilt under 46 U.S.C. § 12132(b) and the Second Proviso of the Jones Act is contrary to the clear and unambiguous language of these provisions and is arbitrary and capricious, an abuse of discretion and without adequate explanation.

## SECOND CAUSE OF ACTION

60. Plaintiffs hereby repeat and reallege and incorporate paragraphs 1 through 59 above.

61. The Defendants' implementation of their regulation, 46 C.F.R. § 67.177 is contrary to the clear and unambiguous language of the regulation as well as NVIC 2-90, and is arbitrary and capricious, an abuse of discretion and without adequate explanation.

## THIRD CAUSE OF ACTION

62. Plaintiffs hereby repeat and reallege and incorporate paragraphs 1 through 61 above.

63. The Defendants failed to follow lawful administrative procedures in connection with their reversal of the rule reflected in NVIC 2-90 by the issuance of the preliminary rebuild determination and the certificate of documentation with a coastwise endorsement for the M/T SEABULK TRADER. Such failure is contrary to law, arbitrary and capricious, an abuse of discretion, and without adequate explanation.

## RELIEF REQUESTED

WHEREFORE Plaintiffs pray:

64. That the Court declare that the Defendants' issuance of a certificate of documentation with a coastwise endorsement to the M/T SEABULK TRADER is inconsistent with 46 U.S.C. § 12101(a) and 46 U.S.C. § 12132(b) insofar as the Defendants did not consider the substantial alteration of the hull necessary to convert the M/T SEABULK TRADER to a double hull vessel that complies with OPA 90 requirements to be the addition of a major component of the hull or superstructure not built in the United States. This work, performed in the People's Republic of China, constituted a rebuild outside the United States that resulted in the loss of eligibility by the M/T SEABULK TRADER to engage in the coastwise trade.

65. That the Court declare that the Defendants' issuance of a certificate of documentation with a coastwise endorsement to the M/T SEABULK TRADER is inconsistent with 46 U.S.C. § 12101(a) and 46 U.S.C. § 12132(b) insofar as the Defendants did not properly calculate all steel to be added during the retrofitting of a

double hull on the vessel in making its determination as to whether the vessel had been rebuilt outside the United States, did not consider whether the work constituted additions or modifications instead of repair and replacement work, and did not consider all work that may be performed in different shipyards to bring the vessel into compliance with OPA 90.

66. That the Court declare that the Defendants' issuance of a certificate of documentation with a coastwise endorsement to the M/T SEABULK TRADER is inconsistent with applicable regulations at 46 C.F.R. § 67.177(e) and (g) in that the coastwise endorsement was issued without the submission of required information by the vessel's owner before and after the conversion of the vessel to a double hull configuration.

67. That the Court declare that the Defendants' issuance of a certificate of documentation with a coastwise endorsement to the M/T SEABULK TRADER is inconsistent with the published Coast Guard rule stated in NVIC 2-90, which provides that the retrofitting of a double hull is a rebuild that, because it was accomplished in a foreign shipyard, disqualifies the vessel from eligibility to engage in the coastwise trade.

68. That the Court declare that the Defendants failed to follow lawful administrative procedures, including their own procedures, in reversing the rule governing double hull retrofit projects established in NVIC 2-90, and in issuing the preliminary rebuild determination and the certificate of documentation with a coastwise endorsement to the M/T SEABULK TRADER.

69. That the Court declare that the Defendants' implementation of their regulation, 46 C.F.R. § 67.177, is inconsistent with the regulation and the Second Proviso of the Jones Act.

70. That the Court declare that in making rebuild determinations for vessels being partially converted in a foreign shipyard and partially converted in a United States shipyard, the Defendants must consider the project as a whole to determine if the vessel is rebuilt.

71. That the Court declare that in making rebuild determinations the Defendants must consider both the steel weight that will be added to the vessel in a foreign shipyard as well as the steel weight to be removed in a foreign shipyard.

72. That the Court declare that in making discretionary rebuild determinations for steel weight work exceeding 7.5%, the Defendants must consider whether the work in a foreign shipyard constituted additions and modifications to the vessel.

73. That the Court require the Defendants to revoke the coastwise endorsement from the certificate of documentation for the M/T SEABULK TRADER.

74. That the Court grant such other relief as is proper and just.


Respectfully submitted this 9th day of July 2007.

SHER & BLACKWELL LLP

By: _____

Donald J. Kassilke (Va. Bar # 48440)
    (dkassilke@sherblackwell.com)
Marc J. Fink (mfink@sherblackwell.com)
Anne E. Mickey (amickey@sherblackwell.com)
SHER & BLACKWELL LLP
1850 M Street N.W., Suite 900
Washington, DC  20036
Tel: (202) 463-2500

*Counsel for Plaintiff Shipbuilders Council of America, Inc.*


VENABLE LLP

By: _____

Michael W. Robinson (Va. Bar # 26522)
(mwrobinson@venable.com)
William D. Dolan III (Va. Bar # 12455)
(wddolan@venable.com)
Michael G. Roberts (mgroberts@venable.com)
David G. Dickman (dgdickman@venable.com)
Venable LLP
575 7th Street N.W.
Washington, DC  20004
Tel:  (202) 344-4000

*Counsel for Plaintiff Crowley Maritime Corp.*


DiMUROGINSBERG P.C.

By: _____

Bernard J. DiMuro (Va. Bar # 18784)
(bdimuro@dimuro.com)
DiMuroGinsberg P.C.
908 King Street, Suite 200
Alexandria, VA 22314
Tel: (703) 684-4333

*Counsel for Plaintiff Overseas Shipholding Group, Inc.*

25

SHER & BLACKWELL LLP

By: _____

Donald J. Kassilke (Va. Bar # 48440)
        (dkassilke@sherblackwell.com)
Marc J. Fink (mfink@sherblackwell.com)
Anne E. Mickey (amickey@sherblackwell.com)
SHER & BLACKWELL LLP
1850 M Street N.W., Suite 900
Washington, DC 20036
Tel: (202) 463-2500

*Counsel for Plaintiff Shipbuilders Council of America, Inc.*

VENABLE LLP

By: _____

Michael W. Robinson (Va. Bar # 26522)
(mwrobinson@venable.com)
William D. Dolan III (Va. Bar # 12455)
(wddolan@venable.com)
Michael G. Roberts (mgroberts@venable.com)
David G. Dickman (dgdickman@venable.com)
Venable LLP
575 7th Street N.W.
Washington, DC 20004
Tel: (202) 344-4000

*Counsel for Plaintiff Crowley Maritime Corp.*

DiMUROGINSBERG P.C.

By: _____

Bernard J. DiMuro (Va. Bar # 18784)
(bdimuro@dimuro.com)
DiMuroGinsberg P.C.
908 King Street, Suite 200
Alexandria, VA 22314
Tel: (703) 684-4333

*Counsel for Plaintiff Overseas Shipholding Group, Inc.*

NAVIGATION AND VESSEL INSPECTION CIRCULAR NO. 2-90

**United States**
**Coast Guard**

COMDTPUB P16700.4
NVIC 2-90
21 September 1990

NAVIGATION AND VESSEL INSPECTION CIRCULAR NO. 2-90
*Electronic Version for Distribution on the World Wide Web*
Subj:   Recommended Standards for Double Hulls to be Fitted on New Tank Vessels or Retrofitted on Existing Tank Vessels

1.   <u>PURPOSE</u>. The purpose of this Circular is to provide guidance to the marine industry for the construction of new tank vessels, and the retrofitting of existing tank vessels, with double hulls as required by the Oil Pollution Act of 1990.

2.   <u>BACKGROUND</u>.

    a.   Congress recently enacted the Oil Pollution Act of 1990 (the Act) in response to several marine pollution incidents, most notably the grounding of the EXXON VALDEZ in March 1989. Section 4115 of this Act requires tank vessels that are constructed (or that undergo major conversions) under contracts awarded after June 30, 1990 to have double hulls. Section 4115 also requires tank vessels that are constructed or converted under earlier contracts to be retrofitted with double hulls or retired in accordance with a timetable commencing in 1995.

    b.   The Act does not specify standards for the acceptance of double hulls required by section 4115. The absence of standards has created a difficult situation where owners desiring to construct new vessels or retrofit existing vessels do not currently have guidance on dimensions for double hulls that the Coast Guard will accept as meeting the double hull requirements of the Act.

3.   <u>DISCUSSION</u>.

    a.   This Circular recommends the incorporation of the following double hull standards, which largely incorporate related existing standards that are internationally accepted, when planning the construction, major conversion, or retrofitting of tank vessels.

    b.   The <u>entire</u> sides and bottom within the cargo tank length should be protected by spaces having the dimensions required for protectively located segregated ballast tanks in Regulation 13E of MARPOL 73/78, which is reprinted in 33 CFR 157 Appendix C. These protective spaces should not contain any oil.

    c.   Vessels under 20,000 deadweight tons may reduce the minimum width of spaces protecting the sides of the cargo block. This width may decrease linearly from 2 meters, for a 20,000 deadweight ton vessel, to 1 meter, for a vessel of 10,000 deadweight tons or smaller. The minimum depth of spaces protecting the bottom of the cargo block on vessels under 20,000 deadweight tons should be the lesser of either B/15 or 2 meters, but in no case less than 1 meter.

    d.   Vessels under 10,000 deadweight tons that are constructed and certificated primarily for service on inland routes should maintain a minimum clearance of 2 feet between the outer skin and the sides and bottom of the cargo block. This is considered to be the minimum distance that will provide sufficient clearance for inspection and maintenance. These protective spaces should not contain any oil.



NAVIGATION AND VESSEL INSPECTION CIRCULAR NO. 2-90

e.  Prohibited oil spaces in accordance with 33 CFR 155.470 should include any space forward of the transverse plane that is located in accordance with the guidance for locating collision bulkheads in Regulation 11.2 of Chapter 11-1 of SOLAS 74/83, regardless of whether the actual fitting of a collision bulkhead is otherwise required. For a barge, this distance is five percent of vessel length aft of the stem at the freeboard deck. The prohibited oil space need not exceed 25 feet in length, or 2 feet for box and trail barges, unless the actual fitting of a collision bulkhead at a greater distance is required by Regulation 11.2.

f.  The stem should be no closer to any part of a cargo tank containing oil than the minimum recommended herein from the vessel's side at amidships.

g.  The guidance contained in Navigation and Vessel Inspection Circular 1-81 should be used in width and depth of the determining the measurements of the minimum double hull.

4.  IMPLEMENTATION.

a.  Owners of tank vessels contracted for after June 30, 1990 and owners of vessels undergoing or pending construction under earlier contracts are urged to incorporate this guidance.

b.  This Circular is intended to provide guidance that will be used to review vessel plans on a case-by-case basis for compliance with section 4115 of the Act, pending the development of regulations for double hulls. The formation of these regulations will be influenced by discussions at the International Maritime Organization as well as input received during the rulemaking process. Vessels built under plans that are approved in accordance with this guidance prior to the effective date of these regulations will be deemed to be in compliance with the requirement for double hulls in section 4115 of the Act.

c.  The retrofitting of double hulls, sides, or bottoms within or upon a vessel will be considered to be a rebuilding within the meaning of 46 CFR 67.27-3. Determinations as to whether such retrofits will be considered to be major conversions within the meaning of 33 CFR 157.03(k) will be made on a case-by-case basis; determinations involving work that extends beyond the retrofitting required by section 4115 of the Act is beyond the scope of this Circular and will be evaluated in accordance with existing guidance.

J. D. SIPES
Rear Admiral, U.S. Coast Guard
Chief, Office of Marine Safety,
    Security and Environmental Protection

**United States**
**Coast Guard**

COMDTPUB P16700.4
NVIC 2-90, CH-1
24 November 1992

NAVIGATION AND VESSEL INSPECTION CIRCULAR NO. 2-90, CHANGE 1
*Electronic Version for Distribution on the World Wide Web*
Subj:   CH-I to NVIC 2-90, Recommended Standards for Double Hulls to be Fitted on New Tank
Vessels or Retrofitted on Existing Tank Vessels

Ref:   (a) Interim Final Rule of Double Hull Standards for Vessels Carrying Oil in Bulk, 57 FR 36222
and 33 CFR Part 157

1.   PURPOSE. This Circular updates Navigation and Vessel Inspection Circular (NVIC) 2-90, by
clarifying the applicable period for use of the double hull guidelines provided in the NVIC.

2.   DISCUSSION.

   a.   Section 4115 of the Oil Pollution Act of 1990 (OPA 90) requires tank vessels that are
   constructed (or that undergo major conversions) under contracts awarded after June 30,
   1990, to have double hulls. NVIC 2-90 was an interim step to the publishing of double
   hull standards in regulation which could not be completed until international guidelines
   were established and the regulatory process could be completed. NVIC 2-90 provided
   policy guidance on double hull dimensions for vessels being constructed or undergoing
   major conversions under contracts awarded on or after June 30, 1990, but prior to the
   effective date of the Interim Final Rule (IFR), reference (a)

3.   IMPLEMENTATION.

   a.   Tank vessels that are constructed or converted under contracts awarded before September
   11, 1992, may follow the standards for double hull construction contained in NVIC 2-90
   or the IFR.

   b.   Tank vessels that are constructed or converted under contracts awarded on or after
   September 11, 1992, must follow the standards for double hulls contained in the IFR.

   c.   NVIC 2-90 should be maintained for future reference as guidelines used to design double
   hull vessels that are built or converted under contracts awarded between June 30, 1990
   and September 11, 1992.

   d.   Any questions which arise on this matter may be directed to the Merchant Vessel
   Inspection and Documentation Division¡ Standards Development Branch (G-MVI-2).

A. E. HENN
REAR ADMIRAL, U.S. COAST GUARD
CHIEF, OFFICE OF MARINE SAFETY, SECURITY
AND ENVIRONMENTAL PROTECTION



# UNITED STATES OF AMERICA

## DEPARTMENT OF HOMELAND SECURITY
### UNITED STATES COAST GUARD

## NATIONAL VESSEL DOCUMENTATION CENTER

# CERTIFICATE OF DOCUMENTATION

OMB APPROVED
1625-0027

| VESSEL NAME | OFFICIAL NUMBER | IMO OR OTHER NUMBER | YEAR COMPLETED |
|---|---|---|---|
| SEABULK TRADER | 636899 | 7816549 | 1981 |

| HAILING PORT | HULL MATERIAL | MECHANICAL PROPULSION |
|---|---|---|
| PORT EVERGLADES, FL | STEEL | YES |

| GROSS TONNAGE | NET TONNAGE | LENGTH | BREADTH | DEPTH |
|---|---|---|---|---|
| 29,763 GT ITC | 16,257 NT ITC | 613.3 | 105.8 | 60.0 |

| PLACE BUILT |
|---|
| AVONDALE, LA |

| OWNERS | OPERATIONAL ENDORSEMENTS |
|---|---|
| SEABULK ENERGY TRANSPORT INC | REGISTRY |
| | COASTWISE |

MANAGING OWNER
SEABULK ENERGY TRANSPORT INC
2200 ELLER DRIVE, LEGAL DEPT
PO BOX 13038
FORT LAUDERDALE, FL 33316

VESSEL DOCUMENTATION OFFICE
U. S. COAST GUARD

RESTRICTIONS
NONE

I hereby certify this to be a true
copy of the records of this office.

_Linda Upton_ 5-11-07
Documentation Officer          Date
M.H. 8:34 AM

ENTITLEMENTS
NONE

REMARKS
NONE

ISSUE DATE
MAY 09, 2007

THIS CERTIFICATE EXPIRES
MAY 31, 2008

DIRECTOR, NATIONAL VESSEL DOCUMENTATION CENTER

DS
Inter

PREVIOUS EDITION OBSOLETE. THIS CERTIFICATE MAY NOT BE ALTERED.

EXHIBIT 2